## UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF FLORIDA
## PENSACOLA DIVISION

TERRA CARROLL,

     Plaintiff,

v.                                                    Case No.  3:18-cv-2382-RV/MJF

SANTA ROSA COUNTY, *et al.*,

     Defendants.

_____/

## <u>REPORT AND RECOMMENDATION</u>

This matter is before this court on Plaintiff Terra Carroll's sixth amended complaint. Carroll again has failed to state a facially-plausible claim for relief against the named Defendants. The undersigned recommends that Carroll's federal claims in Counts 2, 3, 4, 5, 6, 8, 10, and 11 be dismissed under 28 U.S.C. § 1915(e)(2)(B)(ii) because her allegations fail to state a claim upon which relief can be granted. Additionally, the undersigned recommends that the District Court decline to exercise supplemental jurisdiction over Carroll's state law claims contained in Counts 1, 7, 9, and 12.[1]

---

[1] The District Court referred this case to the undersigned to address preliminary matters and to make recommendations regarding dispositive matters. *See* N.D. Fla. Loc. R. 72.2; *see also* 28 U.S.C. § 636(b); Fed. R. Civ. P. 72(b).

# I. BACKGROUND

Carroll's sixth amended complaint names the following ten Defendants: (1) the City of Gulf Breeze, Florida; (2) the Gulf Breeze Police Department; (3) Blaine Weirs, a Gulf Breeze Police Officer; (4) Kerstan Tatro, a Gulf Breeze Police Officer; (5) Santa Rosa County, Florida; (6) the Santa Rosa County Sheriff's Office; (7) Tammy Buzbee, a Santa Rosa County Sherriff's Deputy; (8) Imogene Schmitt, a Santa Rosa County Sherriff's Deputy; (9) Joe McCurdy, the former Sheriff of Santa Rosa County; and (10) Armor Correctional Health Services, Inc. ("ACHS"), a contractor that provided medical care at the Santa Rosa County Jail. (Doc. 26 at 4 ¶¶ 2-11)

Carroll's sixth amended complaint is organized into the following twelve counts:

**Count One:** negligence in violation of Florida law re Kerstan Tatro;

**Count Two:** excessive force in violation of the Fourteenth Amendment re Blaine Weirs;

**Count Three:** deliberate indifference to a serious medical need in violation of the Eighth Amendment re Tammy Buzbee;

**Count Four:** deliberate indifference to a serious medical need in violation of the Eighth Amendment re Imogene Schmitt;

**Count Five:** deliberate indifference to a serious medical need in violation of the Fourteenth Amendment re ACHS;

**Count Six:** excessive force in violation of the Fourteenth Amendment re the Gulf Breeze Police Department;

**Count Seven:** failure to properly supervise and train in violation of Florida law re Kerstan Tatro;

**Count Eight:** deliberate indifference to a serious medical need in violation of the Fourteenth Amendment re the Santa Rosa County Sheriff's Office;

**Count Nine:** common law false imprisonment in violation of Florida law re the Santa Rosa County Sheriff's Office;

**Count Ten:** breach of the duty of care while solitarily confined in violation of the Eighth Amendment re the Santa Rosa County Sheriff's Office;

**Count Eleven:** deliberate indifference to a serious medical need (failure to intervene while solitarily confined) in violation of the Eighth Amendment re the Santa Rosa County Sheriff's Office; and

**Count Twelve:** negligence in violation of Florida law re the Santa Rosa County Sheriff's Office.

(Doc. 26).

The following facts are taken from Carroll's sixth amended complaint and the audio-video footage recorded on a camera mounted to the dashboard of Defendant

Kerstan Tatro's patrol vehicle ("the audio-video recording"),[2] which are presumed to be true and accurate for the purposes of this report and recommendation.[3]

**A.**   **Allegations Regarding Defendants Weirs, Tatro, Buzbee, and Schmitt**

On September 10, 2016, an unnamed individual called 911 and reported a reckless driver driving in the bicycle lane on Highway 98 in Santa Rosa County, Florida. (Doc. 26 at 8 ¶ 1). This driver was Carroll.

Defendant Buzbee of the Santa Rosa Sheriff's Office located Carroll on Highway 98 and followed "her for several miles prior to Carroll again driving in inappropriate lanes." (*Id.* at 8 ¶ 2). The "Santa Rosa Sheriff's Office and the Gulf Breeze Police Department attempted to stop Plaintiff's vehicle for reckless driving and fleeing to elude law enforcement." (*Id.* at 8 ¶ 3).

---

[2] In her various amended complaints, including her Sixth Amended Complaint, Carroll incorporated by reference the audio-video recording available at https://www.pnj.com/story/news/crime/2016/09/13/attorney-flees-deputies-hits-police-cruiser/90305696/. (Doc. 28 at 1; Doc. 26 at 8 ¶ 4; *Id.* at 9 ¶ 34; *Id.* at 9 ¶ 32; *Id.* at 15 ¶ 116; Doc. 17 at 34 (referencing the video of the incident posted on September 16, 2016 by Pensacola News Journal)). Carroll states that she "believes that the above-referenced video accurately reflects 'the events that occurred on September 10, 2016, before, during, and after Plaintiff's arrest.'" (Doc. 28 at 2).

[3] "[W]hen the exhibits contradict the general and conclusory allegations of the pleading, the exhibits govern." *Crenshaw v. Lister*, 556 F.3d 1283, 1292 (11th Cir. 2009); see *Gill ex rel. K.C.R. v. Judd*, 941 F.3d 504, 514 (11th Cir. 2019) (noting that "when exhibits attached to a complaint contradict the general and conclusory allegations of the pleading, the exhibits govern") (internal quotations omitted).

The audio-video recording shows Carroll driving a white SUV on the incorrect side of Highway 98 while other motorists switch lanes to avoid colliding with her. (0:01-0:11). Carroll's vehicle and Defendant Tatro's patrol vehicle collide head-on, which causes Carroll's vehicle to stop moving. (0:10-0:20; Doc. 26 at ¶ 8). Tatro orders Carroll to "put [her] hands out of the window." Carroll does not comply. (0:20-0:22). Another patrol vehicle arrives on scene, and the unnamed officer parks behind Carroll's vehicle. (00:37-39).

Buzbee approaches Carroll's vehicle on the passenger side and attempts to open Carroll's passenger back door, however, it is locked. (0:49). Buzbee then walks behind Carroll's vehicle, approaches the driver's side of Carroll's vehicle, and orders Carroll to "put her hands up." (1:00). At this time, Weirs approaches the passenger side of Carroll's vehicle. (1:01). Buzbee attempts to open the driver's side back door, however, it is locked. Weirs then uses his expandable baton to break the passenger side window of Carroll's vehicle, and he instructs Carroll to "put [her] hands up." (1:09-1:13); (Doc. 26 at ¶ 9). During this time, passing motorists continue to drive in the two remaining lanes directly beside Buzbee on the driver's side of Carroll's vehicle. (0:01-1:14).[4]

---

[4] After approximately 1:14 of the audio-video recording, motorists ceased driving in the two lanes directly adjacent to the driver's side of Carroll's vehicle.

Tatro then approaches the passenger side of Carroll's vehicle beside Weirs. (1:19); (Doc. 26 at 8 ¶¶ 10-11). Tatro states to Carroll: "Ma'am, unlock that door, okay?" and "Come on, just do what we ask you to do, okay?" Tatro then slowly opens[5] Carroll's front passenger door and tells Carroll: "Okay you're scaring your puppy dog." Carroll responds: "I don't have a gun."

Thereafter, at least six times, Tatro and Weirs ordered Carroll to unlock the door of her vehicle. (1:20-1:55). Carroll did not comply with their commands. Instead, at least seven times, Carroll ordered Defendants to put their weapons away. (1:20-1:55). Finally, Weirs states: "Ma'am stop, it's not going to happen, unlock your door." Carroll again responded: "Put your weapons away." (1:53).

Weirs then used his expandable baton to break the driver's side door window. (2:10-2:13); (Doc. 26 at 9 ¶ 17). He then reached inside, unlocked the door, and opened the door. (2:14). He then removed Carroll from her vehicle by pulling Carroll's left arm while placing his right arm around Carroll's upper shoulder area and pulling her to the ground. (2:17-2:21); (Doc. 26 at 9 ¶ 18, 15 ¶ 120).

As Weirs removed Carroll from her SUV, it began to roll backwards with the driver's side door ajar. (2:20); (Doc. 26 at 15 ¶¶ 119-20). The bottom of the ajar driver's side car door made contact with Carroll's right arm for approximately three to

---

[5] It is unclear from the video who unlocked Carroll's front passenger side door.

four seconds while she was on the ground. Defendants then rolled Carroll onto her abdomen and handcuffed her.

Carroll alleges that Weirs utilized excessive force by "snatching" her "from the driver's seat of her vehicle" and that as a result of being removed from the vehicle, her head made contact with "the ground/pavement." (Doc. 26 at 9 ¶ 19).

After the officers handcuffed Carroll, Defendants Weirs, Tatro, and Buzbee searched Carroll. During the search, the audio-video recording clearly records Carroll asking the officers: "What are ya'll doing?" and "What are you looking for?" Carroll stated: "I don't have a weapon." (3:26-3:47). Thereafter, for approximately twenty seconds, Carroll made indecipherable sounds—which she describes as "chanting." (Doc. 26 at 9 ¶ 21). One of the Defendants then asked Carroll if she is able to stand. Carroll immediately stopped "chanting" and clearly responded: "No I can't, she has my hands tied." (3:54). Defendants Tatro, Weirs, and Buzbee assisted Carroll to stand, and Carroll walked to one of the patrol vehicles.

Carroll alleges that Defendant Schmitt drove Carroll to the Santa Rosa County Jail. Carroll alleges that, during the drive, she was confused, disoriented, and "chanted." (Doc. 26 at ¶¶ 97-103).

Carroll contends that as a result of Weirs utilizing excessive force, she developed bruises and abrasions to her left arm, specifically from "being pulled from

car." (Doc. 26 at 14 ¶ 109).

The undersigned takes judicial notice that, on January 9, 2018, Carroll was found guilty by a jury in the First Judicial Circuit in and for Santa Rosa County, Florida, of one felony count of "fleeing or attempting to elude [law enforcement officers] (1) in agency vehicle (2) with siren and lights activated at high speed." *Florida v. Carroll*, No. 16001406CFMXAX (Fla. 1st Cir. Ct. Sept. 10, 2016).[6] Carroll also was convicted of one misdemeanor count of "resisting officer without violence." (Doc. 26 at ¶ 6). Carroll appealed her judgment and conviction. The First District Court of Appeal affirmed Carrol's judgment and conviction. *Carroll v. Florida*, No. 1D18-2327 (1st DCA Nov. 12, 2019).

## B.   Allegations Regarding Post-Arrest Confinement

Carroll does not allege the precise time that she arrived at the Santa Rosa County Jail. However, on September 10, 2016, at 10:00 pm, nondefendant Amy Dixon conducted a mental health intake screening as well as a patient intake health screening of Carroll. (Doc. 26 at 14 ¶ 104, 15 ¶ 113). Carroll contends that, even though she was exhibiting odd behavior such as "chanting" and "delusional statements" while she was in the holding cell and during her health screenings, she did not receive medical

---

[6] Under Federal Rule of Evidence 201(b), a court may "take judicial notice of facts that are not subject to reasonable dispute because they are capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." *Bryant v. Avado Brands, Inc.*, 187 F.3d 1271, 1278 (11th Cir. 1999).

treatment at the Santa Rosa County Jail on September 10, 2016. (*Id.* at 14-15 ¶¶ 104-114). Carroll alleges that during the health screenings, Amy Dixon notated that Carroll had bruises and abrasions to her left arm, which she suffered when she was pulled from her vehicle. (*Id.* at 14 ¶ 109).

On September 10, 2016, Carroll was placed in solitary confinement in the "medical pod" of the Santa Rosa County Jail and received daily confinement checks by nondefendant Debbie Reeves, a registered nurse, and other unnamed medical professionals. (Doc. 26 at 14 ¶ 110, 15 ¶ 114). Carroll remained in solitary confinement in the "medical pod" until November 2, 2016. (*Id.* at 18 ¶ 165). Carroll contends that, during this period, the Santa Rosa County Sheriff's Office "delayed" necessary medical treatment "for non-medical reasons." Specifically, Carroll states that, from September 12, 2016, through November 2, 2016, the Sheriff's Office should have evaluated Carroll for head trauma, fluid retention, and physical injury. (*Id.* at 19 ¶ 175).

 For relief, Carroll seeks general, special, compensatory, and punitive damages. (*Id.* at 21).

## II. STANDARD

Because Carroll is proceeding *in forma pauperis*, this court is required to review Carroll's sixth amended complaint, identify cognizable claims, and dismiss the complaint, or any portion thereof, if the complaint "(i) is frivolous or malicious; (ii)

fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B). "Under 1915(e), district courts have the power to screen complaints filed by all IFP litigants, prisoners and non-prisoners alike." *Mehmood v. Guerrra*, 783 F. App'x 938, 940 (11th Cir. 2019) (citing *Rowe v. Shake*, 196 F.3d 778, 783 (7th Cir. 1999)); *Brown v. Johnson*, 387 F.3d 1344, 1347 (11th Cir. 2004) (noting that 1915(e) applies to "any plaintiff proceeding *in forma pauperis*").

Determining whether a complaint states a claim upon which relief can be granted is governed by the standard set forth in Rule 12(b)(6) of the Federal Rules of Civil Procedure. Fed. R. Civ. P. 12(b)(6); *Mitchell v. Farcass*, 112 F.3d 1483, 1485 (11th Cir. 1997). The court accepts all well-pleaded factual allegations of the complaint as true and evaluates all reasonable inferences derived from those facts in the light most favorable to the plaintiff. *Hunnings v. Texaco, Inc*., 29 F.3d 1480, 1483 (11th Cir. 1994). To survive dismissal, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the

misconduct alleged." *Iqbal*, 556 U.S. at 678. The mere possibility that the defendant acted unlawfully is insufficient. *Id.* The complaint's factual allegations "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555; *see also Iqbal*, 556 U.S. at 678 (reiterating that although Rule 8 of the Federal Rules of Civil Procedure does not require detailed factual allegations, it demands "more than an unadorned, the-defendant-unlawfully-harmed-me accusation"). A court also should dismiss a complaint for failure to state a claim "when its allegations, on their face, show that an affirmative defense bars recovery on the claim." *Cottone v. Jenne*, 326 F.3d 1352, 1357 (11th Cir. 2003); *see Jones v. Bock*, 549 U.S. 199, 215 (2007) (reiterating that principle); *also Marsh v. Butler Cnty.*, 268 F.3d 1014, 1022 (11th Cir. 2001).

## III. DISCUSSION

### A.   <u>Count Two: Claim of Excessive Force re Weirs</u>

Carroll alleges that Defendant Weirs violated the Fourth Amendment by using excessive force when he removed her from her SUV. (Doc. 26 at 12-13).

The Fourth Amendment prohibits unreasonable seizures of persons. U.S. Const. amend. IV. For purposes of the Fourth Amendment, the "arrest of a person is 'quintessentially a seizure.'" *Payton v. New York*, 445 U.S. 573, 585 (1980) (quoting *United States v. Watson*, 423 U.S. 411, 428 (1976) (Powell, J., concurring)).

An officer's authority "to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it." *Graham v. Connor*, 490 U.S. 386, 396 (1989) (citing *Terry v. Ohio*, 392 U.S. 1, 22-27 (1968)). "When an officer carries out a seizure that is reasonable, taking into account all relevant circumstances, there is no valid excessive force claim." *Cnty. of L.A., Cal. v. Mendez*, 581 U.S. ___, 137 S. Ct. 1539, 1547 (2017). An officer violates the Fourth Amendment, however, when he uses force that was not justified under the relevant circumstances to arrest or apprehend a suspect. *Mendez*, 137 S. Ct. at 1547; *Graham*, 490 U.S. at 394-95; *Oliver v. Fiorino*, 586 F.3d 898, 905 (11th Cir. 2009). A claim of excessive force in violation of the Fourth Amendment, therefore, requires a plaintiff to allege the following five elements:

1. the defendant seized or attempted to seize the plaintiff;

2. the defendant was acting under color of state law;

3. the defendant intentionally used force in an effort to effect the seizure of the plaintiff;

4. viewed objectively from the perspective of a reasonable officer on the scene, the amount of force that the defendant employed was excessive;

5. the use of force proximately caused injury to the plaintiff.

*Mendez*, 137 S. Ct. at 1546-47; *Kingsley v. Hendrickson*, 576 U.S. 389, 396 (2015);

*Graham*, 490 U.S. at 396-97; *Ratliffe v. Aransas Cnty., Texas*, 948 F.3d 281, 287 (5th Cir. 2020).

As to the fourth element, determining "whether the force used to effect a particular seizure is 'reasonable' under the Fourth Amendment requires a careful balancing of 'the nature and quality of the intrusion on the individual's Fourth Amendment interests' against the countervailing governmental interests at stake." *Graham*, 490 U.S. at 396 (quoting *Tennessee v. Garner*, 471 U.S. 1, 8 (1985)); *Stryker v. City of Homewood*, 978 F.3d 769, 773 (11th Cir. 2020).

### 1.    *The Nature and Quality of the Intrusion*

The nature and quality of the intrusion measures the extent of force used in the particular instance. *See Forrester v. City of San Diego*, 25 F.3d 804, 807 (9th Cir. 1994).

Here, the audio-video recording clearly shows Defendant Weirs pulling Carroll out of the driver's side door by her right arm while Weirs places his right arm around Carroll's upper shoulder area and pulls her to the ground. Defendants then rolled Carroll onto her abdomen and handcuffed her.

The nature and quality of the intrusion upon Carroll's personal security was minimal. Defendant Weirs appears to use the least amount of force necessary to remove Carroll from her SUV. Defendant Weirs "did not threaten or use deadly force

and did not deliver physical blows or cuts." *Forrester*, 25 F.3d at 806, 807; *Buckley v. Haddock*, 292 F. App'x 791, 795 (11th Cir. 2008) (determining that "[a]lthough Plaintiff's injuries are not insignificant, neither are they severe" when the plaintiff alleged that he sustained "emotional injury as well as sixteen small taser burns, which caused some scarring and keloid growth").

### 2.     The Government's Interest in Safely Apprehending a Suspect

An analysis of the government's interest requires courts to consider the so-called "*Graham* factors": "(1) 'the severity of the crime at issue,' (2) 'whether the suspect poses an immediate threat to the safety of the officers or others,' and (3) 'whether he is actively resisting arrest or attempting to evade arrest by flight.'" *Stryker*, 978 F.3d at 774 (quoting *Graham*, 490 U.S. at 396); *Lee v. Ferraro*, 284 F.3d 1188, 1197-98 (11th Cir. 2002).

### a)     <u>The Severity of the Crimes at Issue</u>

The first *Graham* factor involves assessing the severity of the crime at issue. *Graham*, 490 U.S. at 396. "[M]ore force is appropriate for a more serious offense and less force is appropriate for a less serious one . . . ." *Lee*, 284 F.3d at 1198.

In this case, the State charged Carroll with a violation of Fla. Stat. § 316.1935.3, which is a felony offense: Fleeing or Attempting to Elude Law Enforcement Officers (1) in Agency Vehicle (2) With Siren and Lights Activated at High Speed. Indeed,

Carroll was convicted of this offense by a jury. (Doc. 26 at 8 ¶ 6). Fleeing from police officers poses a danger to the pursuing officers as well as innocent persons also using the roadway. Not surprisingly, such a crime is characterized as a "serious" or "severe" one. *See Glasscox v. City of Argo*, 903 F.3d 1207, 1215 (11th Cir. 2018) (stating that the officer "undeniably was justified in using force to make an arrest" where the plaintiff had "eluded the police vehicle, with its emergency lights and sirens activated, for more than five miles driving at" a high rate of speed); *Teal v. Campbell*, 603 F. App'x 820, 823 (11th Cir. 2015) (determining that the case involved a "severe" and "serious" crime where the plaintiff "led the officers on a dangerous high-speed chase followed by dangerous flight on foot").[7]

### b)    <u>Immediate Threat to the Safety of Officers or Others</u>

Courts also consider whether a plaintiff posed an immediate threat to the safety of officers or others. *Graham*, 490 U.S. at 396. Here, Carroll posed an immediate threat to the safety of the officers who were pursuing her and to other motorists on the roadway. The high-speed chase—in which Carroll drove on the wrong side of the road—ended only after Carroll's vehicle made contact with Defendant Tatro's patrol

---

[7] The second underlying crime at issue here is Fla. Stat. 843.02 resisting officer without violence to his or her person. The Eleventh Circuit has described similar charges as "of minor severity" for the purpose of the *Graham* analysis. *Vinyard v. Wilson*, 311 F.3d 1340, 1347 (11th Cir. 2002); *see also Fils v. City of Aventura*, 647 F.3d 1272, 1288 (11th Cir. 2011).

vehicle. After Defendants ordered Carroll to unlock her driver's side door in order to exit the vehicle, Carroll refused to comply. She continued to pose a danger insofar as she was in her vehicle and could have used it to ram the officers or others. Indeed, the audio-video recording shows Carroll's SUV rolling backwards after Carroll is extracted, which indicates that her vehicle was still running and was not in "park."

Additionally, the audio-video recording shows that Carroll's SUV was on an active highway and was blocking traffic. Motorists attempted to avoid Carroll's SUV, but Carroll continued to pose a danger to the other motorists insofar as her SUV was blocking traffic and could have hit other vehicles—just as it struck the patrol vehicle. Carroll posed an immediate and objectively serious threat to the lives and safety of officers and others. *See Glasscox*, 903 F.3d at 1216; *Buckley*, 292 F. App'x at 794-95.

### c)      Active Resistance or Attempts to Evade Arrest

Courts also consider whether the plaintiff was actively resisting arrest or attempting to evade arrest by flight. *Stryker*, 978 F.3d at 774 (quoting *Graham*, 490 U.S. at 396). Here, Carroll repeatedly disobeyed the officer's repeated commands to unlock the door to her SUV. That is, Carroll resisted the officers' attempts to arrest her. *Elliott v. Wilcox*, 641 F. App'x 893, 898 (11th Cir. 2016); *Buckley*, 292 F. App'x at 794-95; *Forrester*, 25 F.3d at 807-08. As the Eleventh Circuit has stated, "[T]he government has an interest in arrests being completed efficiently and without waste of

limited resources: police time and energy that may be needed elsewhere at any moment." *Buckley*, 292 F. App'x at 794.

In light of the foregoing, Carroll has failed to state a claim upon which relief can be granted regarding Count Two.

## B.   <u>Count Five: Claim of Deliberate Indifference re ACHS</u>

Municipalities may not be held liable in a section 1983 action under a *respondeat superior* theory. *Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 403 (1997); *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691-94 (1978). To impose section 1983 liability on a municipality, a plaintiff must establish: "(1) that his constitutional rights were violated; (2) that the municipality had a custom or policy that constituted deliberate indifference to that constitutional right; and (3) that the policy or custom caused the violation." *McDowell v. Brown*, 392 F.3d 1283, 1289 (11th Cir. 2004) (citing *City of Canton, Ohio v. Harris*, 489 U.S. 378, 388 (1989)); *see Bd. of Cnty. Comm'rs of Bryan Cnty.*, 520 U.S. at 403-04 ("[W]e have required a plaintiff seeking to impose liability on a municipality under § 1983 to identify a municipal 'policy or custom' that caused the plaintiff's injury."). This is often referred to as the *Monell* framework.

Policies are either officially adopted by the municipality or are created by a sufficiently high-ranking individual such that he could be said to be acting on behalf

of the municipality. *Sewell v. Town of Lake Hamilton*, 117 F.3d 488, 489 (11th Cir. 1997). Customs are practices that are so pervasive and settled such that they have the force of law. *Id.*; *see Bd. of Cnty. Comm'rs of Bryan Cnty.*, 520 U.S. at 404 ("An act performed pursuant to a 'custom' that has not been formally approved by an appropriate decisionmaker may fairly subject a municipality to liability on the theory that the relevant practice is so *widespread* to have the force of law.").

Thus, for a municipality to be liable under *Monell*, "[a] pattern of similar constitutional violations . . . is ordinarily necessary" because a "single incident would not be so pervasive as to be a custom." *Craig v. Floyd Cnty., Ga.*, 643 F.3d 1306, 1310 (11th Cir. 2011) (internal quotation marks omitted); *see City of Okla. City v. Tuttle*, 471 U.S. 808, 823-24 (1985) (plurality opinion) ("Proof of a single incident of unconstitutional activity is not sufficient to impose liability" against a municipality.).[8]

Carroll states in her sixth amended complaint that ACHS provided "medical care and personnel at the Santa Rosa County Jail" during Carroll's term pretrial incarceration. (Doc. 26 at 2 ¶ 9). Carroll alleges that ACHS's employees failed to

---

[8] Strictly speaking, it is the Fourteenth Amendment that protects state pretrial detainees such as Carroll. *See Cook ex rel. Est. of Tessier v. Sheriff of Monroe Cnty.*, 402 F.3d 1092, 1115 (11th Cir. 2005). But the standard for medical care generally is the same under the Eighth Amendment and the Fourteenth Amendment. *Tittle v. Jefferson Cnty. Comm'n*, 10 F.3d 1535, 1539 (11th Cir. 1994).

provide sufficient physical and mental medical care for Carroll between September 10, 2016, and November 2, 2016. (Doc. 26 at 14 ¶¶104-14).

Although ACHS is not a governmental entity, "when a private entity . . . contracts with a county to provide medical services to inmates, it performs a function traditionally within the exclusive prerogative of the state" and "becomes the functional equivalent of the municipality" under section 1983. *Craig*, 643 F.3d at 1310; *Buckner v. Toro*, 116 F.3d 450, 453 (11th Cir. 1997); *accord DiPietro v. Med. Staff at Fulton Cnty. Jail*, 805 F. App'x 793, 796 (11th Cir. 2020) (noting that the standard for a government entity also applies to a private entity that is contracted to provide medical services to inmates).

Here, Carroll has failed to allege a policy or custom sufficient for *Monell* liability. Carroll fails to identify a specific policy officially adopted by ACHS or a policy that was created by a sufficiently high-ranking individual, as is required for *Monell* liability. *Sewell*, 117 F.3d at 489. Additionally, Carroll failed to allege a custom under *Monell* because Carroll's allegations do not state a pattern of similar constitutional violations. Instead, Carroll merely alleges a single incident: that *she* was denied adequate medical care. Carroll, therefore, has failed to state a claim upon which relief can be granted with respect to Count Five.

### C.    Count Six: Claim of Excessive Force re The Gulf Breeze Police Department

As discussed above, Carroll alleges that Defendant Weirs—who was employed by the Gulf Breeze Police Department—used excessive force. (Doc. 26 at 15 ¶¶ 115-28). Carroll apparently contends that the Department is liable for excessive force simply because Weirs was an employee at the Gulf Breeze Police Department at the time of Carroll's arrest. (*Id.*).

As noted above, municipalities may not be held liable in a section 1983 action under a *respondeat superior* theory. *Bd. of Cnty. Comm'rs of Bryan Cnty.*, 520 U.S. at 403; *Monell*, 436 U.S. at 691-94. Carroll has wholly failed to make a single allegation that would suggest that the Gulf Breeze Police Department had a "policy or custom" of utilizing excessive force. Instead, Carroll has merely pointed to one single incident where she alleges excessive force was utilized on *her*. This is plainly insufficient for *Monell* liability.[9] Accordingly, Count Six of Carroll's sixth amended complaint also

---

[9] Furthermore, a police department is not a legal entity in the State of Florida and is not subject to suit under 42 U.S.C. § 1983. *Dean v. Barber*, 951 F.2d 1210, 1214 (11th Cir. 1992) ("[P]olice departments are not usually considered legal entities subject to suit."); *Pierre v. Schlemmer*, 932 F. Supp. 278, 280 (M.D. Fla. 1996) ("Where a police department is an integral part of the city government as the vehicle through which the city government fulfills its policing functions, it is not an entity subject to suit.") (internal citations omitted). Florida law provides that counties and municipalizes have the power to sue and be sued. Fla. Const. art. VIII; *Pierre*, 932 F. Supp at 280. For this reason too, Carroll has failed to state a claim upon which relief can be granted with respect to the Gulf Breeze Police Department.

should be dismissed for failure to state a claim upon which relief may be granted.

**D.    Counts Eight, Ten, and Eleven: Santa Rosa County Sheriff's Office**

Carroll has alleged the following three federal claims against Santa Rosa County Sheriff's Office:

**Count Eight:** deliberate indifference to a serious medical need in violation of the Fourteenth Amendment;

**Count Ten:** breach of the duty of care while solitarily confined in violation of the Eighth Amendment; and

**Count Eleven:** deliberate indifference to a serious medical need (failure to intervene while solitarily confined) in violation of the Eighth Amendment. (Doc. 26 at 17-20).

Sheriff departments are not usually legal entities subject to suit in section 1983 claims. *Dean*, 951 F.2d at 1214; *see Presnell v. Paulding Cnty. Ga.*, 454 F. App'x 763, 769 (11th Cir. 2011) (affirming dismissal of a claim against a Georgia sheriff department because it was "not a legal entity subject to be sued"). The "capacity to sue or be sued" is "determined by the law of the state in which the district court is held." *Dean*, 951 F.2d at 1215. In Florida, a sheriff's office is not a legal entity subject to suit under section 1983. *Maldonado v. Baker Cnty. Sheriff's Off.*, 513 F. Supp. 3d 1339, 2021 WL 118979, *6 (M.D. Fla. Jan. 13, 2021) (citing *Faulkner v. Monroe Cnty.*

*Sheriff's Dep't*, 523 F. App'x 696, 701 (11th Cir. 2013)); *Ward v. Okaloosa Cnty. Ct. Sys.*, No. 3:20-cv-5776-LAC/EMT, 2021 WL 2366948, *2 (N.D. Fla. Apr. 26, 2021), *report and recommendation adopted*, 2021 WL 2366094 (June 9, 2021).

Because the Santa Rosa County Sheriff's Office is not a legal entity subject to suit under section 1983, Carroll has failed to state a claim upon which relief can be granted as to Counts Eight, Ten, and Eleven.

**E.**    **<u>Count Three: Deliberate Indifference re Tammy Buzbee</u>**

The Due Process Clause of the Fourteenth Amendment of the United States Constitution has been held to preclude jail officials from showing deliberate indifference to a pretrial detainee's serious medical need. *Melton v. Abston*, 841 F.3d 1207, 1220 (11th Cir. 2016); *Goebert v. Lee Cnty.*, 510 F.3d 1312, 1326 (11th Cir. 2007). In assessing such claims, courts apply the Eighth-Amendment standard for treatment of prisoners suffering from a serious medical need. *Nam Dang v. Sheriff, Seminole Cnty. Fla.*, 871 F.3d 1272, 1279 n.2 (11th Cir. 2017); *Goebert*, 510 F.3d at 1326; *Cook ex rel. Est. of Tessier v. Sheriff of Monroe Cnty., Fla.*, 402 F.3d 1092, 1115 (11th Cir. 2005).

To state a claim of deliberate indifference to a serious medical need, a plaintiff must sufficiently allege:

(1) he had a serious medical need;

(2) the defendant was deliberately indifferent to that need; and

(3) there is a causal connection between the defendant's act or omission and the constitutional deprivation.

*Melton*, 841 F.3d at 1220; *Mann v. Taser Int'l, Inc.*, 588 F.3d 1291, 1306-07 (11th Cir. 2009); *Rodriguez v. Sec'y, Dep't of Corr.*, 508 F.3d 611, 625 (11th Cir. 2007); *Taylor v. Adams*, 221 F.3d 1254, 1258 (11th Cir. 2000).

This standard includes an objective component—"that the deprivation was serious enough to constitute cruel and unusual punishment"—and a subjective component—deliberate indifference. *Taylor*, 221 F.3d at 1257. Thus, courts considering an inmate's claim "must ask both if 'the officials act[ed] with a sufficiently culpable state of mind' and if the alleged wrongdoing was objectively 'harmful enough' to establish a constitutional violation." *Hudson v. McMillian*, 503 U.S. 1, 8 (1992) (quoting *Wilson v. Seiter*, 501 U.S. 294, 298, 303 (1991)).

Carroll alleges that Buzbee failed to ensure that Carroll received adequate medical attention after she was arrested but before she was transported to the Santa Rosa County Jail by Defendant Schmitt. (Doc. 26 at 13 ¶¶ 89-96). In support of this argument, Carroll alleges that (1) Buzbee "helped" Weirs remove Carroll from her vehicle; (2) when Carroll was removed from her vehicle, her head "hit the ground"; (3) Buzbee "was aware" that Carroll was chanting; (4) Buzbee "was aware" Carroll

was confused and disoriented; and (5) Buzbee "was aware" that Carroll could not stand

on her own after being handcuffed.[10] *Id.*

### 1.    *Carroll Failed to Allege the Existence of a Serious Medical Need*

Deliberate indifference to medical needs amounts to a constitutional violation

only if those needs are "serious." *Hudson*, 503 U.S. at 9; *Estelle v. Gamble*, 429 U.S.

97, 103-04 (1976). A serious medical need is "one that has been diagnosed by a

physician as mandating treatment or one that is so obvious that even a lay person

would easily recognize the necessity for a doctor's attention." *Farrow v. West*, 320

F.3d 1235, 1243 (11th Cir. 2003) (quoting *Hill v. Dekalb Reg'l Youth Det. Ctr.*, 40

F.3d 1176, 1187 (11th Cir. 1994)); *Keohane v. Fla. Dep't of Corr.*, 952 F.3d 1257,

1266 (11th Cir. 2020). In either of those cases, the medical need is serious if it is

"one that, if left unattended, 'pos[es] a substantial risk of harm.'" *Farrow*, 320 F.3d

at 1243 (quoting *Taylor*, 221 F.3d at 1258); *Keohane*, 952 F.3d at 1266.

Although Carroll contends that her head struck the ground, she was confused,

and she was "chanting," these allegations do not establish a serious medical need

---

[10] This court takes Carroll's allegation as true that Carroll "could not stand on her own" after she was handcuffed. (Doc. 26 at 13 ¶ 96). The audio-video recording indicates, however, that Defendants asked Carroll if she could stand, and Carroll responded: "No I can't, she has my hands tied." (3:54). This suggests that Carroll could not position herself to stand because her hands were restrained behind her back, not that she was physically incapable of standing. Indeed, after Defendants Tatro, Weirs, and Buzbee assisted Carroll to stand, Carroll stood and even walked to the patrol vehicle.

that "has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Farrow*, 320 F.3d at 1243 (quoting *Hill*, 40 F.3d at 1187). Carroll does not allege that her head was bleeding, that her head struck the ground with great force, that she fractured her skull, that she required stitches to close a wound, or that she suffered severe pain.

Courts have held that ailments similar to those Carroll alleges were not serious medical needs. *See Hinson v. Bias*, 927 F.3d 1103, 1122 (11th Cir. 2019) (holding that plaintiff's abrasions and bruises—which resulted from officers pulling plaintiff from his vehicle and causing his face and head to strike the ground—was not a serious medical need); *Fernandez v. Metro Dade Police Dep't*, 397 F. App'x 507, 513 (11th Cir. 2010) (holding that plaintiff's disorientation, bloody nose, bloody mouth, facial bruising, and pain—which resulted from his arrest—were not objectively serious medical needs); *Brock v. Sparkman*, 101 F. App'x 430, 431 (5th Cir. 2004) (holding that injury to plaintiff's head from striking a bed did not amount to a serious medical need); *Wesson v. Oglesby*, 910 F.2d 278, 284 (5th Cir. 1990) (holding that plaintiff's injuries, including swollen wrists with some bleeding, did not constitute a serious medical need).

Because Carroll has failed to allege sufficient facts regarding an essential

element of a claim of deliberate indifference to a serious medical need, Carroll has failed to state a claim against Buzbee upon which relief can be granted.

### 2. *Carroll Also Failed to Allege Deliberate Indifference*

There is a second independent reason to dismiss this claim: Carroll failed to allege that Buzbee acted with deliberate indifference, which is an essential element of this claim.[11] Deliberate indifference is a higher standard than simple negligence and entails three components: "(1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; (3) by conduct that is more than mere negligence." *Farrow*, 320 F.3d at 1245 (citing *McElligott v. Foley*, 182 F.3d 1248, 1255 (11th Cir. 1999)); *Goebert*, 510 F.3d at 1327; *Goodman v. Kimbrough*, 718 F.3d 1325, 1331-32 (11th Cir. 2013). "Deliberate indifference is *not* a constitutionalized version of common-law negligence." *Hoeffer v. Sec'y, Fla. Dep't of Corr.*, 973 F.3d 1263, 1271 (11th Cir. 2020) (quoting *Swain v. Junior*, 961 F.3d 1276, 1287-88 (11th Cir. 2020)).

"Conduct that is more than mere negligence includes: (1) grossly inadequate care; (2) a decision to take an easier but less efficacious course of treatment; and (3)

---

[11] Courts construe the complaint of a *pro se* litigant liberally, unless a *pro se* litigant also is an attorney. *Hornsby-Culpepper v. Ware*, 906 F.3d 1302, 1306 n.1 (11th Cir. 2018); *Olivares v. Martin*, 555 F.2d 1192, 1194 n.1 (5th Cir. 1977). Carroll is an attorney licensed to practice law in the state of Florida. Lawyer Directory, Fla. Bar, https://www.floridabar.org/directories/find-mbr/ (search first name field for "Terra" and last name field for "Carroll").

medical care that is so cursory as to amount to no treatment at all." *Bingham v. Thomas*, 654 F.3d 1171, 1176 (11th Cir. 2011) (citing *Brown*, 387 F.3d at 1351). "An official disregards a serious risk by more than mere negligence 'when he or she knows that an inmate is in serious need of medical care, but he or she fails or refuses to obtain medical treatment for the inmate.'" *Nam Dang*, 871 F.3d at 1280 (citations omitted).

As to the deliberate indifference element, Carroll alleges only that (1) "Buzbee was aware that Plaintiff was chanting after she was snatched from the vehicle"; (2) and "Buzbee did not request medical attention for Plaintiff after she began to chant." This is plainly insufficient to allege deliberate indifference. Carroll has not alleged that Buzbee had subjective knowledge of a risk of *serious harm*, disregarded that risk, and by conduct that is *more than mere negligence*. *Farrow*, 320 F.3d at 1245 (citing *McElligott*, 182 F.3d at 1255). Carroll has not alleged how she was at a risk of serious harm, especially in light of the fact that Carroll was being transported by Defendant Schmitt to the Santa Rosa County Jail where Carroll admits she received a mental health intake screening as well as a patient intake health screening.

Second, as Carroll alleges in her sixth amended complaint, at the time of her arrest, she was arrested for "driving under the influence." (Doc. 26 at 8). While the facts suggest Buzbee—and the other arresting officers—may have been aware that Carroll was disoriented from possible intoxication, Carroll has not alleged facts that

suggest Buzbee had subjective knowledge of a risk of *serious harm*. The "Constitution does not require an arresting police office or jail official to seek medical attention for every arrestee or inmate who appears to be affected by drugs or alcohol." *Mann*, 588 F.3d at 1308 (quoting *Burnette v. Taylor*, 533 F.3d 1325, 1333 (11th Cir. 2008)). Even assuming that Buzbee should have known Carroll may have had a concussion or some other injury, this would be insufficient to state a claim. "[A]n official's failure to alleviate a significant risk that he should have perceived but did not . . . cannot under our cases be condemned as the infliction of punishment." *Farmer v. Brennan*, 511 U.S. 825, 838 (1994).

Accordingly, Carroll has failed to state a claim upon which relief can be granted as to Count Three.

## F.    Count Four: Deliberate Indifference re Imogene Schmitt

In Count Four, Carroll alleges that Defendant Schmitt (1) "was aware that Plaintiff was not chanting prior to being snatched from the vehicle," (2) "was aware that Plaintiff was confused and disoriented," (3) "was aware that Plaintiff chanted all the way to the Santa Rosa County Jail," (4) "was aware that an ambulance was en route to the scene, and (5) "did not have Plaintiff evaluated by emergency personnel prior to transporting her to the Santa Rosa County Jail." (Doc. 26 at 13-14 ¶¶ 97-103).

As discussed above, Carroll has plainly failed to allege that she suffered from

a serious medical need that "has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Farrow*, 320 F.3d at 1243 (quoting *Hill*, 40 F.3d at 1187). For that reason alone, in Count Four, Carroll has failed to state a claim upon which relief can be granted.

Furthermore, Carroll has failed to allege that Defendant Schmitt acted with deliberate indifference, which is an essential element of this claim. Although Carroll faults Schmitt for not having Carroll evaluated by emergency personnel prior to Schmitt transporting Carroll to the jail, Carroll admits that at that time Schmitt began transporting Carroll, there were no emergency medical personnel on scene. Instead, emergency medical personnel were merely "en route." (Doc. 26 at 14 ¶ 100). That is not a sufficient allegation of deliberate indifference to state a claim upon which relief can be granted.

Accordingly, as to Count Four, in at least two respects Carroll has failed to state a claim upon which relief can be granted.

## G.    The District Court Should Decline to Exercise Supplemental Jurisdiction

Carroll also asserts the following four claims under Florida law:

**Count One:** negligence re Kestan Tatro;

**Count Seven:** failure to supervise and train re Kestan Tatro;

**Count Nine:** common law false imprisonment re the Santa Rosa County Sheriff's Office; and

**Count Twelve:** negligence re the Santa Rosa County Sheriff's Office.

It is well established that once a plaintiff's federal claims are dismissed, there remains no independent federal jurisdiction to support the court's exercise of supplemental jurisdiction over any state claims against a defendant. *See Baggett v. First Nat'l Bank of Gainesville*, 117 F.3d 1342, 1352 (11th Cir. 1997). Section 1367(c)(3) of Title 28 provides that a district court may decline to exercise supplemental jurisdiction over claims after it has dismissed all claims over which it has original jurisdiction. *See United Mine Workers v. Gibbs*, 383 U.S. 715, 725-26 (1966).

Where section 1367(c) applies, considerations of judicial economy, convenience, fairness, and comity may influence the court's discretion to exercise supplemental jurisdiction. *See Baggett*, 117 F.3d at 1353 (citation omitted). The Eleventh Circuit has encouraged district courts to dismiss any remaining state claims when the federal claims have been dismissed prior to trial. *Raney v. Allstate Ins. Co.*, 370 F.3d 1086, 1089 (11th Cir. 2004) ("We have encouraged district courts to dismiss any remaining state claims when . . . the federal claims have been dismissed prior to trial."); *Crosby v. Paulk*, 187 F.3d 1339, 1352 (11th Cir. 1999) ("If [the district judge]

decides to dismiss these state-law claims, then they should be dismissed without prejudice so that the claims may be refiled in the appropriate state court.").

Carroll's state claims should be dismissed to permit her to pursue them in a state court. Although it might be convenient for Carroll to continue litigating her case in this court, this court has a substantial number of original jurisdiction cases awaiting review, and neither judicial economy nor fairness to other litigants support retaining jurisdiction of Carroll's state claims and thereby delaying the administration of justice in other cases. Furthermore, a state court would be well qualified to address matters of state law.

Finally, the supplemental jurisdiction statute contains a tolling provision. *See* 28 U.S.C. § 1367(d) (state claims asserted in federal court along with "related" federal claims "shall be tolled while the claim is pending and for a period of 30 days after it is dismissed"); *Artis v. District of Columbia*, 583 U.S. __, 138 S. Ct. 594 (2018). Thus, Carroll's state claims are tolled while they are pending in federal court, and she would have thirty (30) days after dismissal to re-file her state claim in a state court. Therefore, the parties would not suffer prejudice if the District Court elected not to exercise supplemental jurisdiction.

## IV. CONCLUSION

For the reasons set forth above, the undersigned respectfully **RECOMMENDS** that:

1.      The District Court **DISMISS** Counts Two, Three, Four, Five, Six, Eight, Ten, and Eleven of Carroll's sixth amended complaint pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) because Carroll has failed to state a claim upon which relief can be granted.

2.      The District Court decline to exercise supplemental jurisdiction and **DISMISS** without prejudice Carroll's state-law claims alleged in Counts One, Seven, Nine, and Twelve.

3.      The clerk of the court close the case file.

At Pensacola, Florida, this 27th day of August, 2021.

/s/ *Michael J. Frank*
**Michael J. Frank**
**United States Magistrate Judge**

### NOTICE TO THE PARTIES

**Objections to these proposed findings and recommendations must be filed within fourteen (14) days of the date of the report and recommendation. Any different deadline that may appear on the electronic docket is for the court's internal use only and does not control. An objecting party must serve a copy of the objections on all other parties. A party who fails to object to the magistrate judge's findings or recommendations contained in a report and recommendation waives the right to challenge on appeal the district**

court's order based on unobjected-to factual and legal conclusions. *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636. The parties also are advised that if they dispute the accuracy of any facts taken from judicially-noticed documents, recordings, or exhibits, or if they otherwise wish to be heard on the propriety of the court taking judicial notice, they must raise this issue in an objection to this report and recommendation.